AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information Associated with the Account Identified in Attachment A, which is Stored at Premises Controlled by Google LLC | )<br>)<br>)  Case No.  3:20MJ339<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the **Northern** District of **California**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1), 846 | Possession with intent to distribute a controlled substance and conspiracy; |
| 21 U.S.C. 843, 856 | Use of a communications facility to facilitate a drug trafficking offense; Maintaining drug premises; use and carrying a firearm during and in relation to drug trafficking |
| 18 U.S.C. 924(c) | |

The application is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Robert M. Buzzard*
Applicant's signature

Robert M. Buzzard, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
**By telephone** *(specify reliable electronic means)*.

Date: 7/23/20

*Judge's signature*

City and state: Dayton, Ohio                Hon. Sharon L. Ovington, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE ACCOUNT IDENTIFIED IN ATTACHMENT A, WHICH IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC | Case No. 3:20MJ339 <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Robert M. Buzzard, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Google LLC account, identified as: **39336148371** ("SUBJECT ACCOUNT") which is the Google account number associated with Gmail account cahkesr@gmail.com, and user name Cahke Cortner, which is stored at premises controlled by Google LLC, a company headquartered at 1600 Amphitheater Parkway, Mountain View, CA, 94043. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government records and other information in its possession, pertaining to the SUBJECT ACCOUNT.

2. I am a Special Agent with the Federal Bureau of Investigations (FBI), and have been so employed since January of 2002. I am currently assigned to the Cincinnati Division, Dayton Resident Agency. As such, I am charged with investigating crimes against the United States of America, including but not limited to violations of Title 18 and Title 21 of the United States Code. I have received training in drug trafficking investigations and participated in numerous narcotics-related investigations (ultimately leading to successful prosecution) that

1

involved surveillance, the execution of search warrants, gathering evidence of money laundering, interviewing suspected drug traffickers, and supervising the activities of informants who provided information and assistance which resulted in the seizure of narcotics. I am familiar with federal drug laws, and am aware that it is a violation of Title 21, U.S.C., Sections 841(a)(1) and 846 to distribute and possess with intent to distribute controlled substances, as well as to conspire to do the same. I am also aware through my training and experience that drug traffickers commonly use cellular telephones and electronic devices to facilitate their drug trafficking activities/crimes.

3. Along with other agents, officers, and law enforcement officials from the DEA, ATF, and Dayton Police Department, I am currently involved in the investigation of drug trafficking and firearms offenses committed by Nathan GODDARD, Cahke CORTNER, and Lionel COMBS III—including violations of: 21 U.S.C. § 841(a)(1) (possession with intent to distribute controlled substances; 21 U.S.C. § 843(b) (use of a telephone communication facility to facilitate a drug trafficking crime); 21 U.S.C. § 846 (conspiracy to possess with intent to distribute controlled substances); 21 U.S.C. § 856 (maintaining a drug premises); and 18 U.S.C. § 924(c) (use and carrying of a firearm during and in relation to a drug trafficking crime (hereinafter and collectively "Subject Offenses"). I have personally participated in this investigation and have spoken to, as well as received information from, other agents and investigators participating in this matter. For purposes of this Affidavit, I have not distinguished between information of which I have direct knowledge and that of which I have hearsay knowledge. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of the SUBJECT OFFENSES have been committed by GODDARD, COMBS, and CORTNER. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B, present within the information associated with the SUBJECT ACCOUNT.

## PROBABLE CAUSE

6. Between mid-July and late October 2019, members of the DEA Dayton Resident Office conducted an investigation into a Dayton, Ohio based fentanyl trafficking organization. During that investigation, investigators developed a Cooperating Defendant (hereinafter referred to as CD). CD provided information to members of the DEA investigative team for possible consideration in an on-going drug trafficking investigation.

7. During subsequent interviews, CD identified Nathan GODDARD as CD's source of supply for illegal narcotics. CD estimated that he/she obtained approximately one pound of marijuana from GODDARD on or about November 3, 2019 inside a residence at 1454 Ruskin Rd., Dayton, Ohio. During that transaction, CD also observed approximately ten kilograms of suspected drugs present in the basement of the residence. GODDARD informed CD the suspected drugs were fentanyl. On November 4, 2019, DEA investigators monitored a cellular

telephone call between CD and GODDARD. CD called GODDARD at cellular telephone number (704) 497-3706. During the conversation, CD and GODDARD discussed the prior purchase of marijuana on November 3, 2019 and GODDARD showing CD the kilograms of suspected fentanyl. CD asked GODDARD for the purchase price for one kilogram of fentanyl and GODDARD indicated $60,000. CD and GODDARD agreed to communicate at a later time to arrange for the purchase of fentanyl.

8. CD further explained to investigators there were two additional individuals inside the residence at 1454 Ruskin Rd. with GODDARD when the drug transaction occurred on November 3, 2019. The two individuals were later identified by the investigative team as Lionel COMBS III and Cahke CORTNER. CD explained COMBS and CORTNER witnessed the marijuana transaction on November 3, 2019 and reported the kilograms of suspected fentanyl were laying out in the open for everyone in the basement to see (including COMBS and CORTNER). In addition, CD observed CORTNER and GODDARD in possession of similar firearms during and in relation to the narcotics transaction. CD described CORTNER appeared to be acting as an enforcer or body guard for GODDARD during the marijuana transaction.

9. On November 4, 2019, DEA Special Agent Charles Vill obtained a search warrant for the residence at 1454 Ruskin Rd., Dayton, Ohio authorized by U.S. Magistrate Judge Sharon L. Ovington, Southern District of Ohio. The search warrant authorized the seizure of contraband (to include illegal narcotics), U.S. currency, firearms/ammunition, electronic devices (to include cellular telephones and computers), and other items associated with drug trafficking activities.

10. At approximately 6:50 p.m., on November 4, 2019, members of the DEA investigative team executed the federal search warrant at 1454 Ruskin Rd. Upon lawful entry

into the residence, DEA Task Force Officer (TFO) Jorge Del Rio was shot in the face by GODDARD as TFO Del Rio descended down a stairway into a basement. Following the shooting, GODDARD, CORTNER, COMBS, and Courtney Allen were detained by DEA officers in the basement.

11. During a subsequent search of the residence, law enforcement officers located and seized pounds of marijuana, more than six kilograms of cocaine, more than four kilograms of fentanyl, over $40,000 in U.S. currency, the firearm GODDARD used to shoot TFO Del Rio, a similar firearm possessed by CORTNER at the time of the search warrant, and a third firearm from the basement. Additionally, law enforcement officers located and seized fourteen cellular telephones.

12. One of those cellular telephones was a Samsung Galaxy Note8, Serial Number: R38JA0LTZSB, IMEI: 35850208374203, with an identified telephone number of (937) 238-1132. This cellular phone was located and seized from the basement. On November 15, 2019, I obtained a search warrant for the contents of the Samsung Galaxy Note8, authorized by U.S. Magistrate Judge Sharon L. Ovington. A subsequent search of the Samsung Galaxy Note8 revealed the owner/user of the phone was CORTNER with associated Email content for cahkesr@gmail.com. Contents of the search also revealed two Google searches stored on the device for 11/1/2019, which searched the terms: "37.8 Kg to lbs" and "43Kg to lbs." I know through training and experience drug traffickers commonly convert kilograms to pounds to price and sale illegal narcotics. A search of the device's call logs revealed several calls to and from cellular telephone number 937-424-7400, a cellular telephone belonging to GODDARD and also seized from the basement of 1454 Ruskin Rd on November 4, 2019. Stored text messages on

CORTNER'S cell phone displayed coded communications between CORTNER and another cellular telephone number wherein prices for one kilogram of suspected fentanyl/heroin and one kilogram of suspected cocaine were discussed on November 4, 2019. Additionally, stored SMS messages on CORTNER'S cell phone indicated he traveled from Dayton, Ohio to Charlotte, North Carolina in March of 2018 to meet with GODDARD.

13. Based on my training and experience, I know the amount of the narcotics seized from 1454 Ruskin Rd. on November 4, 2019 is indicative of a large-scale drug trafficking operation. I also know that, given the amount of drugs found at the location and indicia of drug trafficking throughout the house – including, for instance, a digital scale and cash in the upstairs of the residence, I believe that the men detained at the Ruskin residence were using this location as a drug premises. I also know that COMBS rented the Ruskin residence; in a post-Miranda interview, COMBS confirmed that he knew GODDARD was storing large quantities of marijuana and money at the residence.

14. I also believe that, given the amount of drugs seized from the residence, the men were not first time participants in the drug trade. (Indeed, GODDARD, has a prior federal conviction for drug trafficking). Based on my training and experience, I know that if often takes an extended period of time for individuals to gain trust from sources of supply to obtain that quantity of narcotics. (The drugs seized had street values in the hundreds of thousands of dollars). In short, based on my training and experience, this was not an isolated incident; rather, the men likely had been trafficking drugs for months prior to this incident.

15. On March 18, 2020, I submitted a court order to Google Inc. compelling them to provide account information associated with Gmail address cahkesr@gmail.com. In response to

the subpoena, Google provided information showing that Google account number **39336148371** (SUBJECT ACCOUNT) is associated with Gmail account cahkesr@gmail.com, that the name associated with the account is Cahke Cortner, and that the phone number associated with the account is 937-238-1132.

16. Based on my training and experience as a law enforcement officer, I know that co-conspirators are frequently in phone contact with each other, passing information back and forth about timing and information about the particular locations involved in the offense, to include addresses and directions to drug stash houses and points of sale.

17. Based on my training and experience, I know that when people act in concert with one another to commit a crime, they frequently utilize cellular telephones to communicate with each other through voice calls, text messages, emails, and social media accounts. These cellular telephones allow them to plan, coordinate, execute drug trafficking activities. Furthermore, I know people often take pictures utilizing their cellular telephones that may implicate them in a crime, i.e., possessing a firearm, posing with large quantities of narcotics, or large amounts of cash.

18. Based on my training and experience, and the information provided herein, I know that individuals communicate about criminal conduct through social media accounts and access those social media accounts through cellular telephones. I also know that individuals engaged in illegal activity often maintain multiple email and social media accounts.

## BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY

19. Based on my training and experience, I know that cellular devices, such as mobile telephones, are wireless devices that enable their users to send and receive wire and/or electronic communications using the networks provided by cellular service providers. In order to send or

7

receive communications, cellular devices connect to radio antennas that are part of the cellular network called "cell sites," which can be mounted on towers, buildings, or other infrastructure. Cell sites provide service to specific geographic areas, although the service area of a given cell site will depend on factors including the distance between towers. As a result, information about what cell site a cellular device connected to at a specific time can provide the basis for an inference about the general geographic location of the device at that point.

20. Based on my training and experience, I also know that many cellular devices such as mobile telephones have the capability to connect to wireless Internet ("wi-fi") access points if a user enables wi-fi connectivity. Wi-fi access points, such as those created through the use of a router and offered in places such as homes, hotels, airports, and coffee shops, are identified by a service set identifier ("SSID") that functions as the name of the wi-fi network. In general, devices with wi-fi capability routinely scan their environment to determine what wi-fi access points are within range and will display the names of networks within range under the device's wi-fi settings.

21. Based on my training and experience, I also know that many cellular devices feature Bluetooth functionality. Bluetooth allows for short-range wireless connections between devices, such as between a mobile device and Bluetooth-enabled headphones. Bluetooth uses radio waves to allow the devices to exchange information. When Bluetooth is enabled, a mobile device routinely scans its environment to identify Bluetooth devices, which emit beacons that can be detected by mobile devices within the Bluetooth device's transmission range, to which it might connect.

22. Based on my training and experience, I also know that many cellular devices, such as mobile telephones, include global positioning system ("GPS") technology. Using this

8

technology, the phone can determine its precise geographical coordinates. If permitted by the user, this information is often used by apps installed on a device as part of the app's operation.

23. Based on my training and experience, I know Google is a company that, among other things, offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Nearly every cellular phone using the Android operating system has an associated Google account, and users are prompted to add a Google account when they first turn on a new Android device.

24. In addition, based on my training and experience, I know that Google offers numerous online-based services, including email (Gmail), navigation (Google Maps), search engine (Google), online file storage (including Google Drive, Google Photos, and Youtube), messaging (Google Hangouts and Google Allo), and video calling (Google Duo). Some services, such as Gmail, online file storage, and messaging, require the user to sign in to the service using their Google account. An individual can obtain a Google account by registering with Google, and the account identifier typically is in the form of a Gmail address. Other services, such as Google Maps and Youtube, can be used while signed in to a Google account, although some aspects of these services can be used even without being signed in to a Google account.

25. In addition, based on my training and experience, I know Google offers an Internet browser known as Chrome that can be used on both computers and mobile devices. A user has the ability to sign in to a Google account while using Chrome, which allows the user's bookmarks, browsing history, and other settings to be synced across the various devices on which they may use the Chrome browsing software, although Chrome can also be used without

9

signing into a Google account. Chrome is not limited to mobile devices running the Android operating system and can also be installed and used on Apple devices.

26. Based on my training and experience, I know that, in the context of mobile devices, Google's cloud-based services can be accessed either via the device's Internet browser or via apps offered by Google that have been downloaded onto the device. Google apps exist for, and can be downloaded to, phones that do not run the Android operating system, such as Apple devices.

27. Based on my training and experience, I know that Google collects and retains location data from devices running the Android operating system when the user has enabled Google location services. Google then uses this information for various purposes, including to tailor search results based on the user's location, to determine the user's location when Google Maps is used, and to provide location-based advertising. In addition, I know that Google collects and retains data from non-Android devices that run Google apps if the user has enabled location sharing with Google. Google typically associates the collected location information with the Google account associated with the Android device and/or that is signed in via the relevant Google app. The location information collected by Google is derived from sources including GPS data, information about the cell sites within range of the mobile device, and information about wi-fi access points and Bluetooth beacons within range of the mobile device.

28. Based on my training and experience, I also known that Google collects and retains information about the user's location if the user has enabled Google to track web and app activity. According to Google, when this setting is enabled, Google saves information including the user's location and Internet Protocol address at the time they engage in certain Internet- and

10

app- based activity and associates this information with the Google account associated with the Android device and/or that is signed in with the relevant Google app.

29. Location data, such as the location data in the possession of Google, can assist in a criminal investigation in various ways. As relevant here, I know based on my training and experience that Google has the ability to determine, based on location data collected via the use of Google products as described above, mobile devices that were in a particular geographic area during a particular time frame and to determine which Google account(s) those devices are associated with. Among other things, this information can inculpate or exculpate a Google account holder by showing that she/he was, or was not, near a given location at a time relevant to the criminal investigation.

30. Based on my training and experience, I know that when individuals register with Google for an account, Google asks subscribers to provide certain personal identifying information. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provide clues to their identity, location or illicit activities.

31. Based on my training and experience, I also know that Google typically retains and can provide certain transactional information about the creation and use of each account on its system. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the

11

status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, Google often has records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

32. As explained herein, information stored in connection with a Google account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Google user's IP log, stored electronic communications, and other data retained by Google, can indicate who has used or controlled the Google account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Google account at a relevant time. Further, Google account activity can show how and when the account was accessed or used. For example, as described herein, Google logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Google access, use, and

events relating to the crime under investigation. Additionally, Google builds geo-location into some of its services. This geographic and timeline information may tend to either inculpate or exculpate the Google account owner. Last, Google account activity may provide relevant insight into the Google account owner's state of mind as it relates to the offenses under investigation. For example, information on the Google account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

33. On or about March 9, 2020, the FBI submitted a preservation request to Google for the cahkesr@gmail.com address associated with the SUBJECT ACCOUNT requesting that Google preserve data, to include subscriber data, IP logs, and emails, from September 1, 2019, to December 1, 2019.

34. Therefore, the computers of Google are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Google, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

35. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Google to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

36. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Google, which will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

37. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

38. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

_Robert M. Buzzard_
Robert M. Buzzard
Special Agent FBI

Subscribed and sworn to before me on this 23rd day of July, 2020.

_Sharon L. Ovington_
Sharon L. Ovington
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Accounts identified as:

1. **39336148371**; account number associated with cahkesr@gmail.com,

that is stored at premises owned, maintained, controlled, or operated by Google LLC, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California, 94043.

1

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be disclosed by Google LLC**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google LLC ("Google"), regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google is required to disclose the following information to the government for each account or identifier listed in Attachment A for the period of **March 1, 2018 to November 5, 2019**:

    a. All available account contents from inception of account to present, including e-mails, attachments thereto, drafts, contact lists, address books, and search history, stored and presently contained in, or maintained pursuant to law enforcement request to preserve.

    b. All electronic files stored online via Google Drive, stored and presently contained in, or on behalf of the account described above.

    c. All transactional information of all activity of the electronic mail addresses and/or individual account described above, including log files, dates, times, methods of connecting, ports, dial-ups, and/or locations.

    d. All business records and subscriber information, in any form kept, pertaining to the electronic mail addresses and/or individual accounts described above, including applications, subscribers' full names, all screen names associated with the subscribers and/or accounts, all account names associated with the

1

subscribers, methods of payment, telephone numbers, addresses, change history, activity logs, device logs, and detailed billing and payment records.

e. All records indicating the services available to subscribers of the electronic mail addresses and/or individual account described above.

f. All search history records stored and presently contained in, or on behalf of the account described above including, if applicable, web and application activity history (including search terms), device information history, and location history.

g. All existing printouts from original storage of all the electronic mail described above.

h. All account contents previously preserved by Google, in electronic or printed form, including all e-mail, including attachments thereto, and Google Drive stored electronic files for the account described above).

i. All subscriber records for any Google account associated by cookies, recovery email address, or telephone number to the account described above.

j. All associated YouTube viewing history, uploading history, and other content.

k. All location information stored in the Google account.

l. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

 m. The types of service utilized;

 n. All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

 o. All records pertaining to communications between Google and any person regarding the account, including contacts with support services and records of actions taken.

Google is hereby ordered to disclose the above information to the government within fourteen days of service of this warrant.

## II. Information to be Seized

All records of the Accounts described in Attachment A that relate to violations of:

- **21 U.S.C. § 841(a)(1)**
- **21 U.S.C. § 843(b)**
- **21 U.S.C. § 846**
- **21 U.S.C. § 856**
- **18 U.S.C. § 924(c)**

and involve Nathan GODDARD, Cahke CORTNER, and Lionel COMBS III, **from March 1, 2018, to November 5, 2018**, including:

 a. Any information related to the drug trafficking activities of CORTNER, GODDARD, and COMBS III;

 b. Any information related to possession of firearms and the use or carrying of firearms in relation to a drug trafficking crime;

 c. Any information related to sources or purchasers/possessors of firearms (including names, addresses, phone numbers, or any other identifying information);

3

  d. Any information regarding the location of CORTNER, GODDARD, and COMBS III;

  e. Any information regarding the location of the user of the Accounts;

  f. All bank records, checks, credit card bills, account information, and other financial records;

  g. Records of Internet Protocol addresses used;

  h. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.